# IN THE UNITED STATES DISTRICT COURT

# FOR THE MIDDLE DISTRICT OF FLORIDA

# ORLANDO DIVISION

| | |
|---|---|
| JOSHUA CROCKETT,<br><br>        Plaintiff,<br><br>vs.<br><br>ORANGE COUNTY BOARD OF<br>COUNTY COMMISSIONERS,<br><br>        Defendant | Case No.: 6:24-CV-01234-WWB<br><br>**PLAINTIFF'S FIRST AMENDED COMPLAINT** |

## INTRODUCTION

Plaintiff Joshua Crockett, proceeding pro se, brings this action against Defendant Orange County Board of County Commissioners ("Orange County") for unlawful employment practices under:

- Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), for discrimination based on color, race, national origin, sex, and religion, as well as retaliation, hostile work environment, failure to promote, and disparate treatment.

- 42 U.S.C. § 1983, for violations of the First Amendment's Free Exercise Clause and retaliation for protected speech.

- Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"), for disability discrimination.

1

For perspective, Plaintiff was employed by Orange County from January 5, 2016, until his termination on June 19, 2023. He alleges discrimination based on his color (white), race (European), national origin (Chippewa Indian), sex (male with long hair), and religion (Follower of Yeshua HaMashiach), retaliation for protected activities including complaints about discrimination, a hostile work environment, failure to promote, disability-based segregation, constitutional violations and disparate treatment.

This First Amended Complaint is filed pursuant to the magistrate judge's order [ECF No. 28], adopted by the district judge [ECF No. 31] on May 29, 2025, curing deficiencies by providing specific factual allegations and evidence, including unrescinded disciplinary notices and a pretextual psychiatric exam, linking Plaintiff's protected characteristics and activities to adverse employment actions. Each count incorporates only relevant paragraphs, ensuring clarity and compliance with Federal Rules of Civil Procedure 8(a)(2) and 10(b), and avoiding all shotgun pleading types per *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313 (11th Cir. 2015).

## JURISDICTION AND VENUE

- This Court has federal question jurisdiction over Title VII and § 1983 claims pursuant to 28 U.S.C. §§ 1331 and 1343.

- Venue is proper in the Middle District of Florida under 28 U.S.C. § 1391(b), as the alleged unlawful acts occurred in Orange County, Florida.

- Plaintiff filed EEOC charges on June 6, 2023, receiving a right-to-sue letter on August 15, 2023, satisfying Title VII and ADA prerequisites.

## PARTIES

- Plaintiff Joshua Crockett is a resident of Kingman, Arizona, employed by Orange County from January 5, 2016, to June 19, 2023.

- Defendant Orange County Board of County Commissioners is a political subdivision of Florida, located at 201 S. Rosalind Ave, Orlando, Florida 32801, and was Plaintiff's employer.

## STATEMENT OF FACTS

### A. Employment History and Qualifications

1. Plaintiff was hired by Orange County on January 5, 2016, as an on-call Console Operator, promoted to full-time Security Representative on September 26, 2016, at the Orange County Convention Center (OCCC), completing probation on March 26, 2017.

2. From 2016 to 2021, Plaintiff's long hair and beard, reflecting his Chippewa Indian heritage, European and male identity, were deemed professional by supervisor Sandra Dailey (black female, African ancestry), as evidenced by Annual Performance Evaluations (APEs), despite EG2 Grooming Policy non-compliance, indicating non-enforcement prior to October 24, 2022 (Exhibit T, Compilation of Supporting Documents, pp. 75-106).

3

## B. <u>EG2 Grooming Policy and Disparate Treatment</u>

3.    Plaintiff was non-compliant with the EG2 Grooming Policy from January 5, 2016, to June 19, 2023, due to his long hair, a fact undisputed in DOAH Case #22-3897, reflecting his Chippewa heritage, European ancestry and white male identity, yet faced no questioning over it until November 30, 2021, suggesting selective enforcement.

4. On June 1, 2020, Isiah White Jr. (black male, African ancestry) was hired as Security Manager, after which Plaintiff experienced intensified discrimination, including targeted grooming enforcement, radio ignorance, and segregation. On June 15, 2023, during the Predetermination Hearing, Plaintiff alleged that White's leadership led to selective EG2 policy enforcement and retaliation, targeting Plaintiff's protected characteristics under Title VII and religious beliefs under the guise of public health (Exhibit T, p. 114).

5.    On September 4, 2022, at 11:12 AM, Charles Young (black male, African ancestry) emailed Plaintiff exclusively, citing EG2 Grooming Policy (D-1 b & c), demanding his hair not exceed the collar and his beard be neatly trimmed, despite Plaintiff's non-compliance since 2016 without prior discipline.

6.    Prior to October 24, 2022, the EG2 Grooming Policy applied to all employees, requiring hair not to exceed below the collar (Exhibit T, pp. 107-109).

7.    On October 24, 2022, at 11:59 AM, Security Manager Isiah White Jr. (black male, African ancestry) emailed supervisors, with assistant supervisors copied, revising the EG2 Grooming Policy to apply only to Security Representatives

and Senior Security Representatives, requiring hair not to exceed below the collar and beards to be neatly trimmed (Exhibit C, pp. 10-16). White knew Plaintiff was the only male Security Representative with long hair, as confirmed by witness statements (¶¶ 11-12). Post-revision, Security Representative Sandra Canzio (brown female, Hispanic, photographed November 9, 2023, with hair below the collar, Exhibit E, pp. 20-21) violated the revised EG2 policy's hair length requirements without discipline, unlike Plaintiff, who faced disciplinary notices and termination (Exhibit J, pp. 44-47). On October 25, 2022, at 7:13 AM, Assistant Security Supervisor Charles Young (black male, African ancestry) disseminated the revised policy to first shift squads.

8.  Before October 24, 2022, the EG2 Grooming Policy applied to all Security Division employees, including Console Operator Frantese Gordon (black female, African ancestry, photographed March 7, 2023, with hair below the collar, Exhibit D, pp. 17-19) and Krystel Smith (black female, African ancestry, former Console Operator promoted to Video Surveillance Coordinator in 2023, with hair below the collar), and Security Supervisor Sandra Dailey (black female, African ancestry), who violated hair length requirements without discipline. Malone Drakes Jr. (black male, short hair), hired externally in March 2022 with no OCCC experience, was promoted to Senior Security Representative over Plaintiff's seven years of experience, evidencing favoritism (Exhibit T, p. 114).

9.   In DOAH Case #22-3897, Security Administrator Sylvester Earl Biggett Jr. (black male, African ancestry) admitted the autonomous robot "B-bot" met his "first appearances" standard, implying arbitrary enforcement against Plaintiff's cultural and sex-based appearance, despite Plaintiff's EG2 Policy non-compliance being previously accepted from 2016-2021 (Exhibit T, pp. 115-116).

10. On May 24, 2023, during a Step II Grievance Hearing #12678, Executive Director Mark Tester (white male, European ancestry) stated "I do not see anyone in security that would be walking around in violation of the dress policy," implying Plaintiff's compliance, yet Plaintiff was disciplined, evidencing pretext (Exhibit T, p. 112).

11. On June 6, 2023, OCCC employee Shantel Fontanez provided a signed witness statement stating, "For as long as I've known Josh I've seen him with long hair below the collar and on his shoulders. I've known him since 2016", confirming Plaintiff's consistent non-compliance with the EG2 Grooming policy since hire.

12. On June 7, 2023, OCCC employee Logan Giabriel provided a signed witness statement stating, "I have been employed at the OCCC since 2019 where I have had the pleasure of meeting security rep Mr. Crockett. Throughout my time working at the OCCC, Mr. Crockett has always been very polite, professional, and his hair is always below the collar, and under the shoulder", confirming Plaintiff's non-compliance and professionalism.

C. <u>**Disability Discrimination and Segregation**</u>

13.     In September of 2020, Plaintiff, who has asthma substantially affecting breathing, requested an accommodation to wear a face shield instead of a cloth/surgical mask to perform all duties, opposing the County's COVID-19 masking mandate. Orange County granted the face shield but segregated Plaintiff to the Hall A Parking Garage from November 1, 2020, to March 9, 2023, 370 days after the mask mandate lift on March 4, 2022, under the pretext of an ADA accommodation for social distancing. The County's use of six-foot social distancing stickers and "Safer, Stronger, Together" merchandise suggest a performative, non-essential policy, undermining the segregation rationale, especially given the lack of a scientific basis for social distancing (Exhibit L, pp. 50-51; ¶ 53). Additionally, disciplinary notices for mask non-compliance (Exhibit B, pp. 5-9) further reveal pretext, violating the ADA's requirement for the most integrated setting. No other employees were segregated for similar ADA accommodation requests post-mandate lift, to Plaintiff's knowledge, further evidencing pretext.

13a. From September 3 to September 28, 2020, Plaintiff used a face shield without issue as a Security Representative, mitigating his asthma, which substantially limits breathing with cloth or surgical masks. On September 3, 2020, Charles Young approved the face shield, and on September 23, 2020, he indicated a bandana to prevent forehead skin irritation would be approved with a doctor's note. On September 24, 2020, Sandra Dailey approved the face shield but

rejected the bandana. On September 29, 2020, Dailey and Young informed Plaintiff that the face shield was no longer acceptable, citing HR policy, and required a cloth mask or a supplement with a doctor's note, framing it as an "exception" rather than an ADA accommodation.

14. On February 3, 2022, Plaintiff filed a public records request for videos showing mask non-compliance at the OCCC. On February 16, 2022, Orange County admitted the footage was on a 30-day rolling window. On March 9, 2022, after the mask mandate was lifted for vaccinated employees on March 3, 2022, and all personnel on March 4, 2022, Orange County quoted $336,000 for reviewing 400 cameras, obstructing Plaintiff's access to evidence of disparate treatment in mask enforcement. Plaintiff's subsequent attempts to narrow the request were met with similar resistance, further evidencing bad faith.

## D. Religious Discrimination and Retaliation

15. On August 26, 2021, Plaintiff, a Follower of Yeshua HaMashiach, requested a religious accommodation for remote work, opposing COVID-19 testing and vaccination (Exhibit A, pp. 1-4). Orange County denied this under the pretext of Fla. Stat. 112.0441, continuing segregation, while granting vaccination accommodations to others.

16. Between October 12 and November 24, 2021, Plaintiff received numerous disciplinary notices for failing to certify vaccination status, test for COVID-19, or wear a mask, despite religious and disability objections (Exhibit B, pp. 5-9).

17. Senior Advisor Monica Woods' (black female, African ancestry) January 5, 2022, email claimed a fraudulent religious accommodation approval while citing Florida Statute § 112.0441, effective November 17, 2021 (Exhibit M, pp. 52-54). In doing so, Orange County coerced Plaintiff with a "Coronavirus Education Assignment" which Plaintiff objected to and denied him a $250 incentive and paid day off, despite eligibility. In contrast, employees with approved religious exemptions received the incentives, targeting Plaintiff's religious objections.

18. On February 6 and 8, 2022, Orange County issued a baseless discipline against Plaintiff for an alleged lack of golf cart certification (Exhibit T, pp. 110-111), supported by a falsified document. To the contrary, an email from Senior Safety and Loss Prevention Analyst, John McElwee on March 21, 2022, at 2:34 PM confirms Plaintiff's certification (Exhibit N, pp. 55-56), revealing pretext tied to his religious accommodation request used to justify his June 19, 2023 termination (¶ 50).

19. Plaintiff, (a white male, of European ancestry), received disciplinary notices on October 8 and 15, 2021 re-issued on November 16 and 24, 2021 for non-compliance with COVID-19 inoculation and testing measures (Exhibit B, pp. 5-9), and remained segregated until March 9, 2023, rather than working remotely as requested (Exhibit A, pp. 1-4), despite the lifting of the mask mandate on March 4, 2022. In contrast, non-white employees Sandra Dailey (black female, African ancestry), Olsen Philippe, and Kevin Chapman (black

males, African ancestry), who opposed COVID-19 vaccination but testing based on their religious beliefs, faced no such disciplines, evidencing preferential treatment due to their color and race, compounded by their religious stances, as a multi-faceted basis for discrimination against Plaintiff.

20. Isiah White's February 3, 2022, letter falsely claimed rescission of the October 2021 COVID-19 disciplines which were re-issued in November 2021, justified no COVID-19 testing accommodation, and was contradicted by unrescinded records (Exhibit I, pp. 40-43; ¶¶ 42-43), evidencing pretext (Exhibit H, pp. 37-39).

21. On August 23, 2022, Plaintiff confronted Mayor Jerry Demings (black male, African ancestry) on video, contesting Orange County's COVID-19 policies citing Title VII protections. Demings responded that government employees don't have a choice, stating, "when you work for the government that's different" and laughed when Plaintiff mentioned Title VII protections, walking away, indicating indifference for Plaintiff's sincere religious objections (Exhibit S, pp. 72-73). This indifference by a final policymaker reflects a municipal custom of disregarding Title VII and First Amendment rights, directly contributing to subsequent retaliatory actions, including Assistant Security Supervisor Charles Young's (black male, African ancestry) same-day squad alignment email omitting Plaintiff's name (¶ 22) and ongoing disciplinary actions (¶¶ 42-43, 50).

22. On August 23, 2022, at 2:19 PM, Assistant Security Supervisor Charles Young (black male, African ancestry) emailed the first shift squad alignment, omitting Plaintiff's name, suggesting exclusion tied to his Chippewa heritage and religious objections, 19 days before Charles Young's September 4, 2022, email criticizing Plaintiff's appearance (¶ 21).

23. On March 10, 2023, at 4:34 PM, Plaintiff emailed Security Supervisor Daniel Brady, copying Security Manager Isiah White, HR, county attorney Shonda White (Isiah White's daughter, black female, African ancestry), and Mayor Demings (black male, African ancestry), asserting that his "natural ethnic rugged appearance", tied to his Chippewa heritage and present since his January 5, 2016 hire, had not affected his professionalism, as evidenced by his Annual Performance Evaluations and probation completion. Plaintiff described ongoing harassment, discrimination, and retaliation, referencing the unresolved 2019 Charles Young incident, segregation post-mask mandate exemption (¶ 13), and targeting after his August 26, 2021, religious accommodation request (Exhibit A, pp. 1-4). Plaintiff warned that further discipline for his appearance would be perceived as retaliation, noting a fraudulent golf cart discipline (Exhibit N, pp. 55-56) and a January 22, 2023, "workplace violence" investigation. The involvement of Assistant County Attorney Shonda White (black female, African ancestry), related to Isiah White, and Mayor Demings suggests a conflict of interest and high-level awareness of systemic targeting. Moreover, this custom is further evidenced by Orange County's failure to

investigate Plaintiff's 2019 OPS complaint (¶ 27), dismissal of his discrimination complaints (¶¶ 25-26), and consistent enforcement of COVID-19 policies (¶¶ 15-20).

24. In DOAH Case #22-3897, Senior HR Advisor Monica Woods testified that "Title VII was not taken into consideration" in processing Plaintiff's August 26, 2021, religious accommodation request opposing COVID-19 testing and vaccination (Exhibit A, pp. 1-4, Exhibit O, pp. 57-60; T. Vol. X, 17:2-14). Isiah White Jr. admitted that unlawful orders applied, stating, "so actually it does apply, Josh", and told Plaintiff, "It's called following the rules", indicating deliberate disregard for Title VII protections (Exhibit Q, p. 66-67; T. Vol. VI, 11:22-25, 12:1-17; T. Vol. XIV, 278:21-25, 279:1-2), supporting pretext in denying Plaintiff's accommodation, issuing disciplinary notices, and terminating him (¶¶ 15-16, 50).

25. On June 6, 2023, Plaintiff filed EEOC charges alleging discrimination based on color, race, national origin, sex, religion, disability, and retaliation.

26. On November 22, 2021, Plaintiff emailed HR, predicting retaliation (DOAH Hearing, Case #22-3897, Petitioner Ex. 1, 1222-1224). On May 15, 2022, and January 19, 2023, Plaintiff emailed HR and Security Management, opposing discriminatory practices (DOAH Case #22-3897, T. Vol. I, 156:9-171:13).

### E. Harassment and Hostile Work Environment

27. On November 21, 2019, Assistant Security Supervisor Charles Young (black male, African ancestry) confronted Plaintiff aggressively, spitting saliva in his

face at Ramp 15, captured on video. Plaintiff's December 4, 2019, OPS complaint was dismissed without investigation.

28. From May 24 to August 17, 2022, Console Operators (black females, African ancestry, including Krystel Smith, Tamara Hunter) repeatedly ignored Plaintiff's radio calls (e.g., "113 to Command, stepping out" on May 24, May 31, July 13, August 8, 2022) or responded with hostility (e.g., August 17, 2022, Smith's "nasty attitude" misidentifying Plaintiff as "114"). On June 20, 2022, Hunter refused Plaintiff's phone call during a medical situation, telling him to "just go," and on June 26, 2022, humiliated him via radio for badge swiping.

29. Plaintiff ceased documenting radio ignorance incidents due to their pervasiveness, indicating ongoing harassment. For example, on August 18, 2022, and August 21, 2022, Console Operators (black females, African ancestry, including Krystel Smith, Tamara Hunter, and others per OCCC scheduling records) continued to ignore Plaintiff's radio calls (¶ 28).

30. On January 19, 2023, Plaintiff emailed Security Management opposing the EG2 Grooming Policy, a protected activity. Orange County misrepresented Plaintiff's January 19, 2023, email as a "workplace violence" concern to justify a fitness-for-duty examination, which was a psychiatric exam that Plaintiff passed. This resulted in Plaintiff's badge swipe access being restricted, unlike his peers, limiting his workplace access.

31. On March 15, 2023, at 3:30 PM, Plaintiff emailed Security Supervisor Daniel Brady, describing "alarming verbal conduct" by Senior Security Representative

Robert Estevez (brown male, Hispanic), who said, "go ahead and record me and see what happens", perceived as a workplace violence threat. Plaintiff reported being verbally belittled, undermining his training, and expressed safety concerns. On March 16, 2023, at 4:51 PM, Plaintiff emailed Brady, copying Young, HR, Ross, and White, describing Estevez's further comments about falling from a balcony causing a "small headache" and referencing Plaintiff's hair, stating, "it wouldn't be good for your hair", which Plaintiff found horrifying. Despite Plaintiff's formal complaints requesting resolution, Orange County required Plaintiff to continue working under Estevez's supervision, and Estevez faced no discipline for his derogatory remarks about Plaintiff's cultural hair, while Plaintiff was disciplined for EG2 Grooming Policy violations tied to his Chippewa heritage evidencing deliberate indifference (Exhibit F, pp. 22-27).

32. On November 30, 2021, Young criticized Plaintiff's long hair, saying, "Your hair needs to be pulled back," the first such criticism in 2,156 days, six days after COVID-19 notices (Exhibit B, 5-9, Exhibit T, pp. 107-109).

33. In DOAH Case #22-3897, White criticized Plaintiff's Chippewa heritage, stating his hair was "worse than before" and asking, "do you have it in writing?" (Exhibit P, pp. 61-63; T. Vol. I, 218:20–221:3). White compared Plaintiff to a "woman" and threatened no promotion unless he cut his hair, saying, "I'll interview you for the senior rep, but I need you to meet me halfway" (T. Vol. I, 219:1–25; Exhibit P, p. 63). White called Plaintiff an "empty wagon" and

asked, "do you ride a bicycle backwards?" (T. Vol. I, 220:23–221:3; Exhibit P, pp. 64-65).

34. White expressed bias, stating, "Crockett, anyone I hired since I been here you can't even sit in the same room as them," and claimed Plaintiff lacked qualifications compared to Urbane Caleb (black male, African ancestry), despite Plaintiff's resume and evaluations (Exhibit R, p. 69; T. Vol. V, 150:4–152:5). White admitted promotions were based on compliance with OCCC policies, including COVID-19 requirements, stating Plaintiff "couldn't lead people... you couldn't do either one", targeting Plaintiff's religious objections to COVID-19 measures and non-conforming male appearance (long hair), further showing pretext for discrimination and failure to promote (Exhibit R, pp. 68-71).

### F. Failure to Promote and Termination

35. On June 27, 2022, Plaintiff applied for the Maintenance Coordinator position (Job ID #29619), which was marked "submitted." However, despite Plaintiff's qualifications (¶ 2), his application was put into the "in progress" status and ignored. On July 28, 2022, Orange County re-posted the position with a disclaimer: "This is a re-post. Previous applicants are still being considered, not required to re-apply", yet Plaintiff received no interview.

36. Between September 27, 2019, and April 26, 2023, Plaintiff applied for 36 positions, including the Senior Security Representative role (March 31, 2022), receiving only two interviews (5.6% rate). Similarly, Plaintiff applied for the

Video Surveillance Coordinator position (Job ID #30529) within the Security Division on November 13, 2022 and applied for the Building Security Coordinator position (Job ID #30504) on November 5, 2022 and applied for the Consumer Investigator position (Job ID #31106) within the Neighborhood Services Division on April 7, 2023. No interviews were granted post-March 2022, despite Plaintiff's qualifications (¶ 2). Of note, Plaintiff achieved a 0% interview rate outside of the Security Division.

37. On March 23, 2022, White hired Daniel Brady (white male, European ancestry), a former subordinate Police Lieutenant under White (Police Captain) at Orlando International Airport, as Security Supervisor. On January 17, 2023, Brady emailed Plaintiff, directing compliance with the EG2 Grooming Policy, revised by White on October 24, 2022, under the pretext of "vagueness" (Exhibit C, pp. 10-16; DOAH Case #22-3897; T. Vol. IV, 892:19-25). Of note, Orange County's previous EG2 Grooming Policy applied to all "employees" within the Security Division (Exhibit T, pp. 107-109). Inevitably, Plaintiff was targeted for non-compliance, while his peers were not (Exhibit D-E, pp. 17-21), contributing to his termination on June 19, 2023 ( ¶ 50).

38. Until March 23, 2022, Security Supervisor Sandra Dailey (black female, African ancestry) managed all security personnel, including Plaintiff, and deemed his appearance "professional" in all APEs from 2016-2021 despite EG2 non-compliance. Upon Brady's hiring, all responsibilities for Security Representatives and Senior Security Representatives were transferred to Brady.

16

39. On May 12, 2022, White instructed Plaintiff to apply for "viable" positions but later testified Plaintiff had "no security experience," contradicting Plaintiff's resume and evaluations (DOAH Case #22-3897; T. Vol. V, 127:17–19).

40. On September 23, 2022, White testified Plaintiff was authorized to wear a ponytail, but on October 24, 2022, banned ponytails via the revised EG2 policy (DOAH Case #22-3897, T. Vol. II, 389:18–390:25).

41. On January 19, 2023, Plaintiff emailed Security Management opposing the EG2 Grooming Policy, a protected activity. On January 22, 2023, Security Supervisor Daniel Brady (white male, European ancestry) and Senior Security Representative Malone Drakes Jr. (black male, African ancestry) approached Plaintiff at the Hall A Parking Garage to take his radio and badge credentials, an act Plaintiff perceived as a humiliation ritual, resulting in a 42-day suspension (Exhibit T, p. 113).

42. On March 15, 2023, Plaintiff received a verbal/oral warning for "Interact with supervisors in a polite and professional manner," citing a violation on January 19, 2023, the date of Plaintiff's protected activity email (Exhibit F, pp. 22-23; ¶ 41), mischaracterized as "workplace violence," leading to a psychiatric exam and 42-day paid administrative leave. This warning listed unrescinded COVID-19 related disciplinary notices from October 8 and 15, 2021, despite Orange County's claim of rescission (Exhibit H, pp. 37-39; ¶ 20), as confirmed by a 2024 public records request (Exhibit I, pp. 40-43). Non-white employees, including Sandra Canzio (brown female, Hispanic, post-October 24, 2022,

Exhibit E, pp. 20-21) and Sandra Dailey, Krystel Smith and Frantese Gordon (black females, African ancestry, pre-October 24, 2022, Exhibit D, pp. 17-19), violated the EG2 Grooming Policy without similar warnings, evidencing color and race-based disparate treatment.

43. On March 21, 2023, Plaintiff received a verbal/oral warning, and on March 22, 2023, a written reprimand, for EG2 Grooming Policy violations, both listing the unrescinded October 8 and 15, 2021, COVID-19 disciplinary notices, contradicting claimed rescission (Exhibit F, pp. 24-27, Exhibit H, pp. 37-39, Exhibit I, pp. 40-43; ¶¶ 20, 42).

44. On March 28, 2023, Plaintiff received a "Notice of Pending Disciplinary Action" for Policy 401 violations based on protected activity (¶ 41; Exhibit F, 22-23).

45. On May 24, 2023, during Grievance Hearing #12678, Isiah White Jr. (black male, African ancestry) falsely claimed Plaintiff's 2016 employee ID badge showed EG2 Grooming Policy compliance, contradicted by its frontal view, his later testimony and witness statements (DOAH Case #22-3897, T. Vol. IV, 892:19–25; ¶¶ 11-12; Exhibit T, pp. 112-113).

46. During the same Grievance Hearing #12678, White admitted the EG2 Grooming Policy was not enforced during Plaintiff's segregation (November 1, 2020-March 9, 2023) due to his "alternative duty position" in the guard shack, but was enforced upon his return, revealing selective enforcement and pretext (Exhibit T, p. 112; ¶ 7).

47. During Grievance Hearing #12678, Union Steward William Ross rebutted White's admission about the "alternative duty position", stating, "if that's the case then it's a clear violation and discrimination", indicating discriminatory intent.

48. During Grievance Hearing #12678, Union Steward Ross accused White of a "personal vendetta" against Plaintiff, supporting discriminatory intent (Exhibits C-E, J, T; ¶ 7).

49. During Grievance Hearing #12678, White claimed ignorance of Plaintiff's Chippewa heritage, contradicting his FCHR affidavit acknowledging Plaintiff's cultural hair (Exhibit T, p. 112).

50. On June 19, 2023, White terminated Plaintiff, citing EG2 Policy violations and the baseless February 6, 2022, golf cart discipline that allegedly occurred on January 31, 2022 (Exhibit T, pp. 110-111), despite Plaintiff's golf cart certification (Exhibit N, pp. 55-56; ¶ 18). The termination letter (Exhibit J, pp. 44-47) omitted unrescinded COVID-19 disciplines from October 8 and 15, 2021 (Exhibit I, pp. 40-43), despite Orange County's February 3, 2022, claim of rescission (Exhibit H, pp. 37-39; ¶¶ 20, 42-43), revealing pretext tied to Plaintiff's religious objections (Exhibit A, pp. 1-4, Exhibit H, pp. 37-39, Exhibit O, pp. 57-60; ¶¶ 15, 24), protected activities (¶ 23) and selective policy enforcement (Exhibit C-E, pp. 10-21; ¶¶ 7-8).

### G. Additional Violations

51. On July 7, 2023, Orange County's counsel, Patricia Rego Chapman, published a plague doctor mask photograph of Plaintiff without consent in a DOAH Emergency Motion (Case #22-3897) on Florida's public DOAH website, accompanied by White's affidavit falsely claiming Plaintiff was a "threat to personal and public safety" (Exhibit G, pp. 28-36). This defamatory publication, one month after Plaintiff's June 6, 2023, EEOC charge (¶ 25), was intended to harm Plaintiff's reputation and deter his protected speech in filing DOAH motions seeking justice for Title VII and ADA violations.

52. On May 7, 2025, the DoD issued a memo stating the COVID-19 vaccination mandate was unlawful (Exhibit K, pp. 48-49). While not binding on Orange County, this memo persuasively supports the lack of a compelling governmental interest for the County's coercive COVID-19 policies, including vaccination and testing requirements, which burdened Plaintiff's religious beliefs (¶¶ 15, 24). The DoD memo, combined with Dr. Fauci's testimony (Exhibit L, pp. 50-51), supports that Orange County's policies lacked a compelling basis, violating Title VII's requirement to accommodate religious beliefs absent a substantial increase in the cost of doing business per *DeJoy. Groff v. DeJoy*, 600 U.S. 447 (2023).

53. On January 8–9, 2024, Dr. Fauci testified the six-foot social distancing rule lacked scientific basis (Exhibit L, pp. 50-51).

## COUNT I: TITLE VII DISCRIMINATION – DISPARATE TREATMENT (COLOR AND RACE)

54. Plaintiff incorporates paragraphs 1-12, 19-20, 27-31, 34-38, 41-43, 45-48, 50 as if fully set forth herein. These paragraphs demonstrate race-based disparate treatment through selective EG2 enforcement (¶¶ 1–12, 27–31, 34–38, 41–43, 45–48, 50) and preferential treatment of non-white employees for similar objections (¶¶ 19–20).

55. Plaintiff, a white male of European ancestry, suffered intentional reverse discrimination when Orange County enforced the EG2 Grooming Policy against his long hair, non-compliant since 2016, as confirmed by Fontanez and Giabriel (¶¶ 3, 11–12). Orange County's preferential treatment of non-white employees, including Sandra Canzio (brown female, Hispanic, Security Representative, post-October 24, 2022, under Daniel Brady, Exhibit E, pp. 20–21) and Sandra Dailey, Krystel Smith, and Frantese Gordon (black females, African ancestry, Console Operators/Supervisor, pre-October 24, 2022, under Dailey, Exhibit D, pp. 17–19), who violated the EG2 Grooming Policy without discipline, reflects race-based discrimination (¶¶ 7–8). Non-white employees Dailey, Olsen Philippe, and Kevin Chapman (black, African ancestry), who opposed COVID-19 vaccination without discipline, further show racial favoritism, as Plaintiff's similar objections led to disciplines (¶ 19; Exhibit B, 5-9; Exhibit T, pp. 107–109). Also, discrimination intensified after Isiah White's hire as Security Manager on June 1, 2020, a black male who targeted Plaintiff's appearance while exempting non-white comparators (¶ 4; Exhibit T, p. 114). Isiah White's October 24, 2022, EG2 policy revision specifically targeted Plaintiff, the only white male Security Representative with

long hair (¶¶ 6–7; Exhibit C, pp. 11–16). Charles Young, a black male, demanded hair compliance on September 4, 2022, despite Plaintiff's non-compliance since 2016 without prior discipline (¶ 5; Exhibit T, pp. 74-106, 107-109), and his August 23, 2022, squad alignment email omitted Plaintiff's name, suggesting race-based exclusion (¶ 22). Console Operators (non-white females) ignored Plaintiff's radio calls, unlike non-white colleagues (¶¶ 28–29). Additionally, Security Supervisor Daniel Brady and Senior Security Representative Malone Drakes, under White's direction, removed Plaintiff's badge and radio on January 19, 2023, a humiliation not imposed on non-white peers (¶ 41; Exhibit T, pp. 112–113, see Count V for retaliatory aspect). Mark Tester's claim of no grooming violations (¶ 10; Exhibit T, p. 112), Fontanez's and Giabriel's statements (¶¶ 11–12), White's false ID badge claim (¶ 45), non-enforcement during segregation (¶ 46), and Ross's vendetta accusation (¶¶ 47–48) show pretext. Exclusion from promotions (Maintenance Coordinator, Video Surveillance Coordinator, ¶¶ 34–36) and termination (¶ 50) demonstrate race-based discrimination, per *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273 (1976), and *Ames v. Ohio Dep't of Youth Servs.*, 144 S. Ct. 1627 (2025), violating 42 U.S.C. § 2000e-2(a).

## COUNT II: TITLE VII DISCRIMINATION – DISPARATE TREATMENT (NATIONAL ORIGIN)

56. Plaintiff incorporates paragraphs 1-12, 22, 31-38, 40-41, 43, 45-50 as if fully set forth herein. These paragraphs demonstrate national origin discrimination

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

through EG2 enforcement targeting Plaintiff's Chippewa hair (¶¶ 1-12, 31-33, 37-38, 40, 43, 45-46), exclusion from promotions and termination (¶¶ 34-36, 50), squad alignment omission (¶ 22), pretextual actions (¶¶ 9-12, 41, 47-48), and disparate treatment (¶ 41).

57. Plaintiff, of Chippewa Indian national origin, suffered intentional discrimination when Orange County targeted his cultural long hair, non-compliant since 2016 (¶¶ 3, 11-12), through discriminatory application of the facially neutral EG2 Grooming Policy, enforced after Isiah White's hire on June 1, 2020 (¶ 4; Exhibit T, p. 114). Unlike *EEOC v. Catastrophe Management Solutions*, 852 F.3d 1018 (11th Cir. 2016), where no discriminatory intent was shown for a neutral policy, the County's selective enforcement against Plaintiff, but not non-Chippewa comparators such as: Security Representative, Sandra Canzio (brown female, Hispanic, post-October 24, 2022, under Brady, Exhibit E, pp. 20–21) and Console Operators Frantese Gordon, Krystel Smith, and Security Supervisor Sandra Dailey (black females, African ancestry, pre-October 24, 2022, under Dailey, Exhibit D, pp. 17–19), shows intent (¶¶ 7–8; Exhibit T, pp. 107-109). Security Supervisor Dailey deemed Plaintiff's hair professional until Brady's hiring on March 23, 2022, when the revised EG2 policy was enforced under the pretext of 'vagueness' (¶¶ 37–38). The County approved Plaintiff's ponytail in September 2022 but reversed it 31 days later with the October 24, 2022, EG2 revision (¶ 40; Exhibit C, pp. 10–16). Assistant Security Supervisor Charles Young's August 23, 2022, squad alignment email omitted Plaintiff's name, targeting his Chippewa heritage

and religious objections, 19 days before Charles Young's September 4, 2022, email exclusively targeting Plaintiff's cultural appearance (¶ 22, see Count IV for religious aspect). Senior Security Representative Robert Estevez (brown male, Hispanic) made threatening hair comments on March 15–16, 2023, stating, 'it wouldn't be good for your hair,' tied to Plaintiff's Chippewa heritage, and faced no discipline, while Plaintiff was disciplined and forced to work under him despite safety concerns (¶ 31; Exhibit F, pp. 24–27; Exhibit T, pp. 117–123). Isiah White criticized Plaintiff's Chippewa hair as 'worsen than before' and compared him to a 'woman,' tying promotions to hair length, pressuring Plaintiff to cut his cultural hair (¶ 33; Exhibit P, pp. 61–63, DOAH testimony). Security Supervisor Brady and Senior Security Representative Drakes took Plaintiff's radio and badge on January 22, 2023, after his January 19, 2023, email opposing EG2 enforcement, a humiliation ritual not imposed on non-Chippewa peers, demonstrating disparate treatment (¶¶ 7, 41; Exhibit T, pp. 112–113, see Count V for retaliatory aspect). Biggett's 'B-bot' testimony (¶ 9; Exhibit T, pp. 115–116, reveals animus), Tester's claim of no grooming violations (¶ 10; Exhibit T, p. 112, reveals pretext). Moreover, Fontanez's and Giabriel's statements demonstrate prior acceptance of Plaintiff's appearance (¶¶ 11–12); thus, revealing pretext. Finally, exclusion from interviews for Maintenance Coordinator, Video Surveillance Coordinator, and other positions (¶¶ 35–36, see Count VII for details), and termination on June 19, 2023 (¶ 50; Exhibit J, pp. 44–47), illustrate national origin discrimination, per *Espinoza v. Farah Mfg. Co.*, 414 U.S. 86 (1973). Additionally, per *Lewis v. City*

*of Union City*, 918 F.3d 1213 (11th Cir. 2019), comparators were similarly situated, sharing job duties and policies.

## COUNT III: TITLE VII DISCRIMINATION – DISPARATE TREATMENT (SEX)

58. Plaintiff incorporates paragraphs 1-12, 22, 27-28, 31-38, 40-41, 43, 45-50 as if fully set forth herein. These paragraphs demonstrate sex discrimination through EG2 enforcement targeting Plaintiff's non-conforming male long hair (¶¶ 1–12, 31–33, 37–38, 40, 43, 45–46), exclusion from squad alignment, radio communications, and badge privileges (¶¶ 22, 28, 41), pretextual actions (¶¶ 9-10, 45-48), and exclusion from promotions and termination (¶¶ 34–36, 50).

59. Plaintiff, a male, suffered intentional and reverse discrimination when Orange County through male supervisors enforced the EG2 Grooming Policy against his long hair, non-compliant since 2016, as confirmed by Fontanez and Giabriel (¶¶ 3, 11-12; Exhibit T, p. 112), targeting his non-conformity to male short-hair stereotypes violating Title VII's protection against sex-based discrimination, including for majority group members like males, per *Ames v. Ohio Dep't of Youth Servs.*, 144 S. Ct. 1627 (2025), and *Bostock v. Clayton County*, 590 U.S. 644 (2020). Unlike *EEOC v. Catastrophe Management Solutions*, 852 F.3d 1018 (11th Cir. 2016), where no discriminatory intent was shown for a facially neutral grooming policy, Orange County's male supervisors – Isiah White, Daniel Brady and Charles Young – demonstrated sex-based animus by selectively enforcing the EG2 policy (Exhibit C, pp. 10-16; Exhibit T, pp. 107-109) against Plaintiff's non-

conforming male appearance. Moreover, discrimination intensified after Isiah White's hire as Security Manager on June 1, 2020, a black male, who targeted Plaintiff's non-conforming appearance while exempting female and short-haired male employees (¶ 4; Exhibit T, p. 114). Security Supervisor Sandra Dailey, a black female, deemed Plaintiff's appearance professional from 2016-2021 (¶ 2; Exhibit T, pp. 75-106), until Dan Brady, a white male and White's former subordinate, assumed oversight on March 23, 2022, enforcing the revised EG2 Grooming Policy under the pretext of "vagueness" (¶¶ 37-38; Exhibit C, pp. 10-16, showing policy revision). Charles Young, a black male, criticized Plaintiff's appearance on November 30, 2021, the first such critique in 2,156 days (¶ 32; Exhibit T, pp. 107-109, showing original policy), and demanded compliance on September 4, 2022, targeting Plaintiff's non-conforming male identity (¶ 5; evidence to be produced in discovery). White's October 24, 2022, EG2 revision applied only to Security Representatives, targeting Plaintiff, the only male with long hair, non-compliant since 2016 (Exhibit C, ¶¶ 6-7). In other words, female employees Sandra Canzio (brown female, Hispanic, post-October 24, 2022), Sandra Dailey, Krystel Smith and Frantese Gordon (black females, African ancestry, pre-October 24, 2022) and short-haired black males (Malone Drakes and Urbane Caleb) were similarly situated under *Lewis v. City of Union City*, 918 F.3d 1213 (11th Cir. 2019). Of note, the identified females violated the policy without discipline (¶¶ 7-8; Exhibit D-E, pp. 17-21). Additionally, Malone Drakes, a black male with short hair, was promoted to Senior Security Representative despite no

OCCC experience, unlike Plaintiff's seven years, evidencing favoritism toward conforming males (¶ 8; Exhibit T, p. 114). In another instance, Urbane Caleb, another short-haired male, was favored for promotions over Plaintiff (¶ 34; Exhibit R, pp. 68-71). Young's August 23, 2022, squad alignment email omitted Plaintiff's name, excluding him due to his non-conforming male identity (¶ 22; evidence to be produced in discovery, see Count IV for religious aspect). Young's 2019 confrontation, spitting saliva in Plaintiff's face, set a hostile tone toward his gender non-conformity (¶ 27; evidence to be produced in discovery). Console Operators, all female (Gordon, Smith, Hunter), ignored Plaintiff's radio calls, excluding him from communication and publicly humiliated him, unlike their treatment of short-haired males (¶ 28). Robert Estevez, a brown male of Hispanic origin, made threatening remarks on March 15-16, 2023, about Plaintiff's hair, stating "it wouldn't be good for your hair," tied to his non-conforming male identity, and faced no discipline, while Plaintiff received EG2-related disciplines on March 21-22, 2023 (¶ 31; Exhibit T, pp. 117-123; Exhibit F, pp. 24-27). White compared Plaintiff to a "woman" and conditioned promotions on cutting his hair, stating, "I'll interview you for the senior rep, but I need you to meet me halfway" (¶ 33; Exhibit P, pp. 61-63), pressuring conformity to male stereotypes. White's bias, claiming Plaintiff "can't even sit in the same room" as others, targeted his gender non-conformity. (¶ 34; Exhibit R, 68-71). White's September 23, 2022, sworn statement authorizing a ponytail, contradicted by the October 24, 2022, EG2 ban, reveals pretext (¶ 40; Exhibit T, pp. 107-109). Brady and Drakes took Plaintiff's

radio and badge after his January 19, 2023, email on January 22, 2023 subjecting Plaintiff to a humiliation ritual excluding him from badge privileges, not imposed on female or short-haired male peers, resulting in a 42-day suspension (¶ 41; Exhibit T, pp. 112-113, see Count V for retaliatory aspect). Further, Sylvester Earl Biggett Jr's testimony that the "B-bot" robot met his "first appearances" standard, unlike Plaintiff's long hair, suggests bias against his non-conforming male identity (¶ 9; Exhibit T, pp. 115-116), Mark Tester's claim of no grooming violations, contradicted by Plaintiff's disciplines, further support pretext (¶ 10; Exhibit T, p. 112). Isiah White's false claim that Plaintiff's 2016 ID badge showed EG2 compliance, non-enforcement during segregation (November 1, 2020-March 9, 2023) and Chief Union Steward William Ross's rebuttal and accusation of a "personal vendetta" demonstrate discriminatory intent (¶¶ 45-48; Exhibit T, p. 112). Finally, exclusion from interviews for Maintenance Coordinator, Video Surveillance Coordinator, and other positions (¶¶ 35-36, see Count VII for details) and termination on June 19, 2023, citing EG2 violations and a baseless golf cart violation, unlike female or short-haired male comparators, demonstrates reverse sex-based discrimination against Plaintiff as a male (¶ 50; Exhibit T, pp. 110-111) per B*ostock v. Clayton County*, 590 U.S. 644 (2020) and *Ames v. Ohio Dep't of Youth Servs.*, 144 S. Ct. 1627 (2025), violating Title VII, 42 U.S.C. § 2000e-2(a).

## **COUNT IV: TITLE VII DISCRIMINATION – DISPARATE TREATMENT (RELIGION)**

28

60. Plaintiff incorporates paragraphs 4, 15-22, 24, 34, 42-43, 50, 52-53 as if fully set forth herein. These paragraphs demonstrate religious discrimination through denial of Plaintiff's accommodation request (¶¶ 15–17, 24), disparate treatment of non-white religious objectors (¶ 19), exclusion from incentives and squad alignment (¶¶ 17, 22), pretextual disciplines (¶¶ 16, 20, 42–43), and termination (¶ 50), compounded by institutional indifference (¶¶ 4, 21, 24, 34, 52–53).

61. Plaintiff, a Follower of Yeshua HaMashiach, suffered intentional discrimination when Orange County denied his August 26, 2021, religious accommodation request to forgo COVID-19 testing and vaccination due to sincerely held religious beliefs (Exhibit A, pp. 1-4; ¶ 15). Orange County's January 5, 2022, letter claimed approval under Florida Statute § 112.0441, effective November 17, 2021 (Exhibit M, pp. 52-54), but was fraudulent, as segregation to the Hall A Parking Garage continued from November 1, 2020, to March 9, 2023, 370 days after the March 4, 2022 mask mandate lift (¶¶ 15, 17, 19). However, Orange County simultaneously argued it approved no exemptions for COVID-19 testing, contradicting the claimed accommodation (Exhibit O, pp. 57-59). Of note, non-white employees Sandra Dailey, Olsen Philippe, and Kevin Chapman (black, African ancestry), who opposed vaccination but not testing based on religious beliefs, faced no disciplinary notices, unlike Plaintiff, evidencing disparate treatment compounded by race (¶ 19; see Count I for race-based details). In fact, disciplinary notices from October 8 and 15, 2021, re-issued November 16 and 24, 2021, remained unrescinded, contradicting White's February 3, 2022, claim of

29

rescission (¶¶ 16, 20, 42-43; Exhibit B, pp. 5-9; Exhibit I, pp. 40-43; Exhibit H, pp. 37-39). Discrimination intensified after Isiah White's hire as Security Manager on June 1, 2020, who enforced COVID-19 policies targeting Plaintiff's religious objections (¶ 4; Exhibit T, p. 114). Additionally, a coercive "Coronavirus Education Assignment" and denial of a $250 incentive and paid day off, offered to employees with approved religious exemptions, further targeted Plaintiff's sincerely held religious beliefs. (¶ 17; Exhibit M, pp. 52-54). Senior HR Advisor Monica Woods (black female, African ancestry) testified that "Title VII was not taken into consideration" in processing Plaintiff's religious accommodation request and admitted no accommodation was granted for COVID-19 testing, further evidencing discriminatory intent (Exhibit O, pp. 57-59; ¶ 24). Isiah White admitted unlawful orders applied, stating, "so actually it does apply, Josh" and "It's called following the rules" revealing deliberate disregard for religious protections (Exhibit Q, pp. 66-67). Mayor Demings' August 23, 2022, dismissal of Title VII protections, laughing when Plaintiff raised his rights, reflects institutional indifference to Plaintiff's religious rights (¶ 21; Exhibit S, pp. 72-73). Assistant Security Supervisor Charles Young's August 23, 2022, squad alignment email, issued the same day, omitted Plaintiff's name, suggesting exclusion tied to his religious stance (¶ 22; evidence to be produced in discovery, distinct from its roles in Counts I-III). White's bias, tying Plaintiff's qualifications and promotions to COVID-19 compliance, further targeted his religious beliefs, stating, Plaintiff "couldn't lead people" (¶ 34; Exhibit R, pp. 68-71). The March 15 and 21–22,

2023, disciplines listed unrescinded COVID-19 disciplines issued on October 8 and 15, 2021, revealing pretext (Exhibit F, pp. 22-27; Exhibit I, pp. 40-43; ¶¶ 42–43). Furthermore, a baseless golf cart discipline, contradicted by John McElwee's March 21, 2022, email, supported termination (Exhibit T, pp. 110-111; Exhibit N, pp. 55-56; Exhibit J, pp. 44-47; ¶ 18). Importantly, the Department of Defense memo (May 7, 2025) and Dr. Anthony Fauci's testimony (January 8-9, 2024) undermine the County's public health rationale, confirming no compelling basis for denying Plaintiff's religious accommodation (¶ 52-53; Exhibit K-L, pp. 48-51). Plaintiff's termination on June 19, 2023, citing the EG2 Grooming Policy and golf cart violations as a pretext for religious discrimination (Exhibit J, pp. 44-47; Exhibit I, pp. 40-43; ¶¶ 20, 42–43, 50; see Counts I-III for EG2-related claims), violating Title VII, 42 U.S.C. § 2000e-2(a), per *Does 1-11 v. Bd. of Regents of Univ. of Colorado*, 100 F.4th 1251 (10th Cir. 2024) and *Groff v. DeJoy*, 600 U.S. 447 (2023).

### COUNT V: TITLE VII - RETALIATION

62. Plaintiff incorporates paragraphs 4, 14, 16, 18, 20-23, 24-26, 30, 41-44, 45-50 as if fully set forth herein. These paragraphs demonstrate retaliation through adverse actions (¶¶ 14, 16, 18, 20, 30, 41–44, 50) in response to Plaintiff's protected activities opposing discrimination based on race, national origin, sex, and religion (¶¶ 4, 14, 21–23, 24–26).

63. Plaintiff engaged in protected activities under Title VII, including filing an EEOC charge on June 6, 2023, alleging discrimination based on color, race,

national origin, sex, religion, disability and retaliation (¶ 25), emailing HR and Security Management on November 22, 2021, May 15, 2022, and January 19, 2023, opposing discriminatory practices (¶ 26). Plaintiff filed a public records request on February 3, 2022, to evidence disparate treatment in mask enforcement (¶ 14), confronted Mayor Jerry Demings on August 23, 2022, contesting COVID-19 policies and citing Title VII protections (¶ 21; Exhibit S, pp. 72–73; see Count IV for religious discrimination details). In summary, Plaintiff emailed Security Supervisor Daniel Brady on March 10, 2023, copying Assistant County Attorney Shonda White, Isiah White, and Demings, reporting ongoing discrimination and retaliation tied to his appearance and religious objections (¶ 23; Exhibit T, pp. 117–123). Additionally, Plaintiff also alleged discrimination and retaliation at the June 15, 2023, Predetermination Hearing, four days before his termination (¶ 4; Exhibit T, p. 114). Orange County retaliated through multiple adverse actions: quoting $336,000 to obstruct Plaintiff's public records request for video evidence of disparate mask enforcement (¶ 14), issuing baseless golf cart disciplines on February 6 and 8, 2022, three days after White's February 3, 2022, letter falsely claiming rescission of COVID-19 disciplines (¶¶ 18, 20; Exhibit T, pp. 110–111; Exhibit I, pp. 40–43; Exhibit N, pp. 55–56), imposing disciplinary notices from October 8 and 15, 2021, re-issued November 16 and 24, 2021, for non-compliance with COVID-19 measures despite Plaintiff's face shield exemption (¶ 16; Exhibit B, pp. 5–9). Even so, Orange County denied Plaintiff a $250 incentive and paid day off, which was offered to employees with approved exemptions (¶ 16; Exhibit

M, pp. 52–54). Assistant Security Supervisor Charles Young excluded Plaintiff from the August 23, 2022, squad alignment email, issued the same day as the Demings confrontation (¶ 22; evidence to be produced in discovery, distinct from its roles in Counts I-IV), and Orange County misrepresented Plaintiff's January 19, 2023, email opposing the EG2 Grooming Policy as a "workplace violence" concern, leading to a psychiatric exam (passed) and badge swipe access restrictions unlike his peers (¶ 30). Moreover, Security Supervisor Daniel Brady and Senior Security Representative Malone Drakes demanded Plaintiff's radio and badge on January 22, 2023, three days after the January 19 email, causing a 42-day suspension perceived as a humiliation ritual (¶ 41; Exhibit T, pp. 113–114; see Counts I-III for disparate treatment details). Plaintiff was issued a verbal/oral warning on March 15, 2023, for conduct tied to the January 19 email, listing unrescinded COVID-19 disciplines (¶ 42; Exhibit F, pp. 22–23; Exhibit I, pp. 40–43), and was issued a verbal/oral warning and written reprimand on March 21–22, 2023, for EG2 policy violations, which listed unrescinded COVID-19 disciplines (¶ 43; Exhibit F, pp. 24–27).  For perspective, a Notice of Pending Disciplinary Action was issued on March 28, 2023, for Policy 401 violations linked to the January 19 protected activity (¶ 44; Exhibit F, pp. 22–23), ultimately culminating in Plaintiff's termination on June 19, 2023, which cited the EG2 policy violations, and the baseless golf cart violation, 13 days after the EEOC charge and 4 days after the grievance hearing, as a pretext for retaliation (¶ 50; Exhibit T, pp. 110–111; Exhibit J, pp. 44–47; see Counts I-IV for discrimination claims). Discrimination

intensified after Isiah White's hire as Security Manager on June 1, 2020, who targeted Plaintiff's protected activities (¶ 4; Exhibit T, p. 114). Senior HR Advisor Monica Woods' testimony that "Title VII was not taken into consideration" in processing Plaintiff's religious accommodation request and White's admission of unlawful orders, stating, "so actually it does apply, Josh" and "It's called following the rules," demonstrate deliberate disregard for Title VII protections (¶ 24; Exhibit O, pp. 57–60; Exhibit Q, pp. 66–67). White's false claim that Plaintiff's 2016 ID badge showed EG2 compliance, contradicted by its frontal view, non-enforcement during segregation (November 1, 2020–March 9, 2023), and Union Steward William Ross's rebuttal and accusation of a "personal vendetta" further show pretext and retaliatory intent (¶¶ 45–48; Exhibit T, p. 112). For instance, Isiah White's denial of knowledge in relation to Plaintiff's Chippewa heritage, despite a signed affidavit submitted to the FCHR which showed that ponytails were apparently allowed, and then subsequently outlawed 31 days later – reveals retaliatory intent (¶ 49; Exhibit T, pp. 107-109). The temporal proximity between Plaintiff's protected activities and adverse actions—e.g., three days from the February 3, 2022, letter to golf cart disciplines (¶¶ 18, 20), same-day squad alignment omission after the Demings confrontation (¶¶ 21–22), three days from the January 19, 2023, email to badge removal (¶¶ 30, 41), 55 days to the March 15–28, 2023, disciplines (¶¶ 42–44), 13 days from the EEOC charge to termination (¶¶ 25, 50), four days from the grievance hearing to termination (¶¶ 4, 50), and 82 weeks from the November 22, 2021, email predicting retaliation to termination (¶¶

26, 50)—establishes causation. This pattern of retaliation for Plaintiff's opposition to discriminatory practices violates Title VII, 42 U.S.C. § 2000e-3(a), per *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013).

## COUNT VI: TITLE VII - HOSTILE WORK ENVIRONMENT

64. Plaintiff incorporates paragraphs 4-5, 7-8, 13, 15-18, 22, 27-28, 31-34, 41, 45-50 as if fully set forth herein. These paragraphs demonstrate a hostile work environment through severe and pervasive harassment targeting Plaintiff's color, race, national origin, sex, and religion (¶¶ 4–5, 7–8, 13, 15–18, 27–28, 31–34, 41, 45–50), including exclusion, humiliation, and termination (¶¶ 22, 28, 41, 50).

65.  Plaintiff, a white male of Chippewa Indian national origin and Follower of Yeshua HaMashiach, endured severe and pervasive harassment that altered his employment conditions, based on his color, race, national origin, sex, and religion, violating Title VII, 42 U.S.C. § 2000e-2(a), per *Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993). Harassment intensified after Isiah White's hire as Security Manager on June 1, 2020, who targeted Plaintiff's protected characteristics (¶ 4; Exhibit T, p. 114). Assistant Security Supervisor Charles Young, a black male, confronted Plaintiff aggressively on November 21, 2019, spitting in his face at Ramp 15, with no investigation despite Plaintiff's OPS complaint, setting a hostile tone (¶ 27; see Count III for sex-based details). Young's September 4, 2022, email demanded EG2 Grooming Policy compliance, targeting Plaintiff's long hair, tied to his Chippewa heritage and non-conforming male identity, despite non-enforcement from 2016–2021 (¶ 5; Exhibit T, pp. 75–109, APEs and previous EG2

35

Grooming Policy). White's October 24, 2022, EG2 revision applied only to Security Representatives, targeting Plaintiff, the only male with long hair, while non-protected employees—Sandra Canzio (brown female, Hispanic, post-October 24, 2022), Frantese Gordon, Krystel Smith, and Sandra Dailey (black females, African ancestry, pre-October 24, 2022)—violated the policy without discipline (¶¶ 7–8; Exhibit C, pp. 10–16; Exhibit D, pp. 17–19; Exhibit E, pp. 20–21). Malone Drakes, a black male with short hair, was promoted despite no OCCC experience, unlike Plaintiff's seven years (¶ 8; Exhibit T, p. 114). Orange County segregated Plaintiff to the Hall A Parking Garage from November 1, 2020, to March 9, 2023, for his asthma accommodation, continuing 370 days after the March 4, 2022, mask mandate lift, isolating him from peers (¶¶ 13, 15; Exhibit T, p. 112; see Count IV for religious details). Orange County issued disciplinary notices on October 8 and 15, 2021, re-issued November 16 and 24, 2021, for non-compliance with COVID-19 measures despite Plaintiff's religious exemption request (¶¶ 15–16; Exhibit B, pp. 5–9). A coercive "Coronavirus Education Assignment" and denial of a $250 incentive and paid day off, offered to employees with approved exemptions, targeted Plaintiff's religious beliefs (¶ 17; Exhibit M, pp. 52–54). A baseless golf cart discipline on February 6 and 8, 2022, contradicted by John McElwee's March 21, 2022, email, further harassed Plaintiff (¶ 18; Exhibit T, pp. 110–111; Exhibit N, pp. 55–56; see Count V for retaliation details). Young's August 23, 2022, squad alignment email omitted Plaintiff's name, suggesting exclusion tied to his protected characteristics (¶ 22; evidence to be produced in discovery, see Counts

I-IV for discrimination details). Console Operators, all black females (Gordon, Smith, Tamara Hunter), ignored Plaintiff's radio calls (e.g., May 24–August 17, 2022) and humiliated him via badge swiping, unlike their treatment of non-protected peers (¶ 28; Exhibit D, pp. 17–19). Robert Estevez, a brown male of Hispanic origin, made threatening remarks on March 15–16, 2023, about Plaintiff's hair, stating, "it wouldn't be good for your hair", tied to his Chippewa heritage and non-conforming male identity, with no discipline for Estevez (¶ 31; see Counts II-III for national origin and sex-based discrimination). White criticized Plaintiff's hair as "worse than before," compared him to a "woman," and conditioned promotions on cutting his hair, stating, "I'll interview you for the senior rep, but I need you to meet me halfway" (¶ 33; Exhibit P, pp. 61–63; see Counts II-III for national origin and sex-based details). White's bias, claiming Plaintiff "can't even sit in the same room" as others and lacked qualifications compared to Urbane Caleb, targeted his protected characteristics (¶ 34; Exhibit R, pp. 68–71). On January 22, 2023, Daniel Brady and Malone Drakes took Plaintiff's radio and badge, a humiliating ritual not imposed on non-protected peers, resulting in a 42-day suspension that further isolated Plaintiff, tied to his non-conforming appearance and religious objections (¶ 41; Exhibit T, pp. 113–114; see Counts I-III for disparate treatment and Count V for retaliation details). Isiah White's false claim that Plaintiff's 2016 ID badge showed EG2 compliance, contradicted by its frontal view, non-enforcement during segregation, and Union Steward William Ross's rebuttal and accusation of a "personal vendetta" demonstrate pretext (¶¶

45–48; Exhibit T, p. 112). Sylvester Earl Biggett Jr.'s testimony that the "B-bot" robot met his first appearances standard, unlike Plaintiff's long hair, suggests bias against his protected characteristics (¶ 9; Exhibit T, pp. 115–116). Mark Tester's claim of no grooming violations, contradicted by Plaintiff's disciplines, further supports pretext (¶ 10; Exhibit T, p. 112). In other words, termination on June 19, 2023, citing EG2 policy violations and a baseless golf cart violation, culminated this hostile environment, altering Plaintiff's employment conditions, as part of a hostile work environment, distinct from discrimination and retaliation claims in Counts I-V (¶ 50; Exhibit T, pp. 110–111; Exhibit J, pp. 44–47; see Counts I-V for discrimination and retaliation claims), per *Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993).

### COUNT VII: TITLE VII – FAILURE TO PROMOTE

66. Plaintiff incorporates paragraphs 2-12, 27-28, 31, 33-39, 42-43, 45-50 as if fully set forth herein. These paragraphs demonstrate failure to promote due to discrimination based on Plaintiff's color, race, national origin, sex, and religion (¶¶ 2–12, 31, 33–39, 42–43), evidenced by pretextual disciplines, exclusion, and termination (¶¶ 27–28, 45–50).

67. Plaintiff, a white male of Chippewa Indian national origin and Follower of Yeshua HaMashiach, suffered intentional discrimination when Orange County denied him 36 promotions from September 27, 2019, to April 26, 2023, despite his seven years of experience and qualifications as a Security Representative (¶¶ 2, 35–36; Exhibit T, pp. 75–106). Of note, Plaintiff applied for positions including

Maintenance Coordinator, Video Surveillance Coordinator, Building Security Coordinator, and Consumer Investigator, among others, only achieving a 5.6% interview rate (two interviews within Isiah White's Security Division, 0% outside), far below peers, due to unrescinded COVID-19 disciplines tainting Plaintiff's personnel file (¶¶ 35–36, 42–43; Exhibit B, pp. 5-9; Exhibit F, pp. 22–27; Exhibit I, pp. 40–43; see Counts IV-V for religious and retaliation details). Discrimination intensified after White's hire as Security Manager on June 1, 2020, who targeted Plaintiff's protected characteristics (¶ 4; Exhibit T, p. 114). Security Supervisor Sandra Dailey, a black female, deemed Plaintiff's long hair professional from 2016–2021, but Daniel Brady, a white male and White's former subordinate, assumed oversight on March 23, 2022, enforcing the EG2 Grooming Policy under the pretext of "vagueness" (¶¶ 2, 37–38; Exhibit C, pp. 10–16; Exhibit T, pp. 107–109). Assistant Security Supervisor Charles Young, a black male, demanded EG2 compliance on September 4, 2022, targeting Plaintiff's long hair, tied to his Chippewa heritage and non-conforming male identity, as confirmed by Shantel Fontanez and Logan Giabriel (¶¶ 5–7, 11–12; Exhibit T, pp. 107–109, 112; see Counts I-III for disparate treatment details). White's October 24, 2022, EG2 revision applied only to Security Representatives, targeting Plaintiff, the only male with long hair, while non-protected employees—Sandra Canzio (brown female, Hispanic, post-October 24, 2022), Frantese Gordon, Krystel Smith, and Sandra Dailey (black females, African ancestry, pre-October 24, 2022)—violated the policy without discipline (¶¶ 7–8; Exhibit D, pp. 17–19; Exhibit E, pp. 20–21).

Malone Drakes, a black male with short hair, was promoted to Senior Security Representative despite no OCCC experience, unlike Plaintiff's seven years (¶ 8; Exhibit T, p. 114). Urbane Caleb, another black male with short hair, was favored for promotions over Plaintiff (¶ 34; Exhibit R, pp. 68–71; see Counts I-III, VI for discrimination details). Young's November 21, 2019, confrontation, spitting in Plaintiff's face at Ramp 15, created a hostile environment impacting promotions (¶ 27; see Count VI for hostile work environment details). Console Operators, all female (Gordon, Smith, Tamara Hunter), ignored Plaintiff's radio calls (e.g., May 24–August 17, 2022) and humiliated him via badge swiping, unlike non-protected peers, hindering promotion prospects (¶ 28; Exhibit D, pp. 17–19; see Count VI for the hostile work environment claim). Robert Estevez, a brown male of Hispanic origin, made threatening remarks on March 15–16, 2023, about Plaintiff's hair, stating, "it wouldn't be good for your hair", tied to his Chippewa heritage and non-conforming male identity, with no discipline for Estevez (¶ 31; Exhibit T, pp. 117–123; see Counts II-III, VI for national origin, sex and hostile environment details). White compared Plaintiff to a "woman" and conditioned promotions on cutting his hair, stating, "I'll interview you for the senior rep, but I need you to meet me halfway," targeting his sex and national origin (¶ 33; Exhibit P, pp. 61–63; see Counts II-III, VI for national origin, sex and hostile environment details). White explicitly tied promotions to compliance with EG2 and COVID-19 policies, stating Plaintiff "can't even sit in the same room" as others and alleged he lacked qualifications compared to Caleb (black male, African ancestry), further targeting

40

his protected characteristics (¶ 34; Exhibit R, pp. 68–71). White's May 12, 2022, letter, urging Plaintiff to apply for "viable" positions, implied the two interviews within the Security Division were theatrical, as no interviews were granted outside of this context, evidencing pretext (¶ 36, 39). Warnings and a reprimand on March 15 and 21–22, 2023, listing unrescinded COVID-19 disciplines from October 8 and 15, 2021, re-issued November 16 and 24, 2021, tainted Plaintiff's personnel file, contributing to the 0% interview rate outside the Security Division (¶¶ 36, 42–43; Exhibit F, pp. 22–27; Exhibit I, pp. 40–43; see Counts IV-V for religious and retaliation details). White's false claim that Plaintiff's 2016 ID badge showed EG2 compliance, contradicted by its frontal view, non-enforcement during segregation (November 1, 2020–March 9, 2023), and Union Steward William Ross's rebuttal and accusation of a "personal vendetta" further demonstrate pretext (¶¶ 45–48; Exhibit T, p. 112). Sylvester Earl Biggett Jr.'s testimony that the "B-bot" robot met appearance standards, unlike Plaintiff's long hair, suggests bias against his protected characteristics (¶ 9; Exhibit T, pp. 115–116). Mark Tester's claim of no grooming violations, contradicted by Plaintiff's disciplines, supports pretext (¶ 10; Exhibit T, p. 112). Termination on June 19, 2023, citing the EG2 policy and the baseless golf cart violation served as a culmination of discriminatory promotion denials, distinct from claims in Counts I-VI (¶ 50; Exhibit T, pp. 110–111; Exhibit J, pp. 44–47; see Counts I-VI for discrimination, retaliation and hostile work environment claims), violating Title VII, 42 U.S.C. § 2000e-2(a), per *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079 (11th Cir. 2004).

## **COUNT VIII: ADA DISCRIMINATION (SEGREGATION)**

68. Plaintiff incorporates paragraphs 13-16, 18-20, 42-43, 46, 52-53 as if fully set forth herein. These paragraphs demonstrate disability discrimination through Orange County's denial of a reasonable face shield accommodation for Plaintiff's asthma, despite its prior successful use, prolonged segregation to the Hall A Parking Garage under a pretextual policy, and adverse actions including disciplines, records request obstruction, and termination (¶¶ 13–16, 18–20, 42–43, 46), lacking a legitimate public health basis (¶¶ 52–53)

69. Plaintiff, a qualified individual with asthma substantially limiting breathing under the ADA, 42 U.S.C. § 12111(8), suffered intentional discrimination when Orange County segregated him to the Hall A Parking Garage at the Orange County Convention Center from November 1, 2020, to March 9, 2023, after granting an ADA accommodation to wear a face shield on November 1, 2020, despite its successful use from September 3 to September 28, 2020, without an ADA accommodation (¶¶ 13, 13a). Plaintiff performed full Security Representative duties with the face shield, as approved by Assistant Security Supervisor Charles Young on September 3, 2020, who indicated on September 23, 2020, that a bandana to prevent forehead irritation would be approved with a doctor's note (¶ 13a). On September 24, 2020, Security Supervisor Sandra Dailey approved the face shield but rejected the bandana, and on September 29, 2020, Dailey and Young deemed the face shield unacceptable, citing HR policy, requiring a cloth mask or a doctor's note supplement, framing it as an "exception" rather than an

42

ADA accommodation (¶ 13a). On November 1, 2020, Orange County granted the face shield accommodation under the pretext of social distancing and segregated Plaintiff to the Hall A Parking Garage, continuing 370 days after the March 4, 2022, mask mandate lift, violating the ADA's most integrated setting requirement (*Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581 (1999); ¶¶ 13, 15; Exhibit T, p. 112; see Count IV for religious details). The County's use of six-foot social distancing stickers, mantras such as: "Safer, Stronger, Together" on merchandise, and a $250 incentive for compliance suggest a performative, non-essential policy, undermining the segregation rationale, especially given the lack of scientific basis for social distancing (¶¶ 13, 16, 53; Exhibit L, pp. 50-51; Exhibit M, pp. 52-54). Orange County issued disciplinary notices on October 8 and 15, 2021, re-issued November 16 and 24, 2021, for failure to certify vaccination status, test for COVID-19 and wear the "appropriate mask in all work settings", despite Plaintiff's asthma-driven needs, revealing the face shield accommodation as pretextual punishment rather than a means of integration (¶ 16; Exhibit B, pp. 5–9; Exhibit M, pp. 52–54; see Counts IV-V for religious and retaliation details). Non-disabled employees, including Sandra Dailey, Olsen Philippe, and Kevin Chapman (black, African ancestry), faced no discipline for similar COVID-19 objections, evidencing disparate treatment (¶ 19; Exhibit B, pp. 5–9; see Count I for race-based details). Isiah White's February 3, 2022, letter falsely claimed rescission of the 2021 COVID-19 disciplines, contradicted by unrescinded records listed in the March 15 and 21–22, 2023, verbal/oral warnings and reprimand,

43

showing pretext (¶ 20; Exhibit I, pp. 40–43; Exhibit F, pp. 22–27; see Counts IV–V for religious and retaliation details). A baseless golf cart discipline on February 6 and 8, 2022, contradicted by John McElwee's March 21, 2022, email, further supported segregation and termination, concealing disability-based discrimination (¶ 18; Exhibit N, pp. 55–56; Exhibit T, pp. 110–111; see Counts IV–V for religious and retaliation details). Orange County quoted $336,000 to obstruct Plaintiff's February 3, 2022, public records request for video evidence of mask enforcement, hindering proof of disparate treatment tied to his disability-based needs (¶ 14). Isiah White's admission that he did not enforce the EG2 Grooming Policy against Plaintiff during segregation (November 1, 2020–March 9, 2023) further reveals the segregation as punitive, not accommodation-driven (¶ 46; Exhibit T, p. 112; see Counts I–III, VI–VII for discrimination and hostile environment details). The Department of Defense memo (May 7, 2025) and Dr. Anthony Fauci's testimony (January 8–9, 2024) undermine the County's public health rationale, confirming no compelling basis for segregation as Fauci admitted the six-foot rule was arbitrary (¶¶ 52–53; Exhibit K, pp. 48–49; Exhibit L, pp. 50–51). Termination on June 19, 2023, citing EG2 and golf cart violations, with unrescinded COVID-19 disciplines omitted culminated in this discriminatory segregation driven by disability animus as a pretext for disability discrimination, distinct from claims in Counts I–VII (¶¶ 42–43; Exhibit J, pp. 44–47; Exhibit T, pp. 110–111; see Counts I–VII for discrimination, retaliation, and hostile environment claims), violating the ADA's requirement for the most integrated setting appropriate, per *Olmstead v.*

44

*L.C. ex rel. Zimring*, 527 U.S. 581 (1999), constituting disability discrimination under 42 U.S.C. § 12132.

## COUNT IX: FIRST AMENDMENT VIOLATION – FREE EXERCISE CLAUSE (42 U.S.C. § 1983)

70. Plaintiff incorporates paragraphs 15-24, 42-43, 46, 50, 52-53 as if fully set forth herein. These paragraphs demonstrate a violation of Plaintiff's First Amendment free exercise rights through Orange County's policy or custom of denying his religious accommodation, imposing pretextual segregation and disciplines, and targeting his religious beliefs with exclusion and termination (¶¶ 15–20, 22–24, 42–43, 46, 50), lacking a compelling interest (¶¶ 52–53).

71. Plaintiff, a Follower of Yeshua HaMashiach, suffered a substantial burden on his sincerely held religious beliefs when Orange County, pursuant to a municipal policy or custom, denied his August 26, 2021, religious accommodation request, opposing COVID-19 testing and vaccination, while granting accommodations to employees of other religious beliefs (¶ 15; Exhibit A, pp. 1–4; see Count IV for Title VII religious details). This custom of deliberate indifference, pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), is evidenced by Mayor Demings' dismissal of Title VII protections on August 23, 2022 (¶ 21; Exhibit S, pp. 72–73) and Assistant County Attorney Shonda White's involvement in reviewing Plaintiff's complaints, suggesting a conflict of interest given her relation to Isiah White (¶ 23; see Count IV for Title VII details). Orange County's unrescinded disciplinary notices on October 8 and 15, 2021, re-issued November

16 and 24, 2021, for non-compliance with COVID-19 policies, and a coercive 'Coronavirus Education Assignment' and denial of a $250 incentive and paid day off for approved exemptions, targeted Plaintiff's religious objections (¶¶ 16, 20, 42–43; Exhibit B, pp. 5–9; Exhibit M, pp. 52–54; see Counts IV–V, VIII for religious, retaliation, and disability details). Isiah White's February 3, 2022, letter falsely claimed rescission of these disciplines, contradicted by unrescinded records listed in March 15 and 21–22, 2023, warnings and reprimand, showing pretext (¶ 20; Exhibit I, pp. 40–43; Exhibit F, pp. 22–27; see Counts IV–V, VIII). Assistant Security Supervisor Charles Young, issued an August 23, 2022, squad alignment email omitting Plaintiff's name, on the same day as the Demings confrontation, suggesting exclusion tied to his religious objections (¶ 22; evidence to be produced in discovery; see Counts I–IV, VI for discrimination and hostile environment details). White's admission of non-enforcing the EG2 Grooming Policy during Plaintiff's segregation (November 1, 2020–March 9, 2023) further reveals discriminatory intent targeting his religious beliefs (¶ 46; Exhibit T, p. 112; see Counts I–III, VI–VIII). Orange County imposed a disciplinary notice for a baseless golf cart discipline on February 6 and 8, 2022, three days after Plaintiff's February 3, 2022, public records request, despite claiming an accommodation on January 5, 2022, citing Florida Statute § 112.0441, which was pretextual as segregation continued 370 days after the March 4, 2022, mask mandate lift (¶¶ 15, 17–18; Exhibit N, pp. 55–56; see Counts IV–V, VIII for religious, retaliation, and disability details). Senior HR Advisor Monica Woods testified that 'Title VII was

not taken into consideration' in processing Plaintiff's religious accommodation request, and White admitted unlawful orders applied, stating, 'so actually it does apply, Josh,' and 'It's called following the rules,' indicating deliberate disregard for constitutional protections (¶ 24; Exhibit O, pp. 57–59). The March 10, 2023, email to Brady, copying Shonda White and Demings, reiterated Plaintiff's religious objections and systemic targeting (¶ 23). The County's 'Safer, Stronger, Together' mantra and excessive merchandise promotion mirrored a business selling products, not a public health crisis, and Dr. Anthony Fauci's testimony (January 8–9, 2024) undermines the public health rationale (¶ 53; Exhibit L, pp. 50–51). The Department of Defense memo (May 7, 2025) and *Does 1-11 v. Bd. of Regents of Univ. of Colo.*, 100 F.4th 1251 (10th Cir. 2024), confirm the mandate's unlawfulness, showing the County's policy was not narrowly tailored to a compelling interest (¶ 52; Exhibit K, pp. 48–49). Termination on June 19, 2023, citing EG2 and golf cart violations, as a pretext for religious discrimination, distinct from claims in Counts I–VII (¶ 50; Exhibit J, pp. 44–47; see Counts I–VII for discrimination, retaliation, and hostile environment claims), violated the First Amendment's Free Exercise Clause under 42 U.S.C. § 1983, per *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993)."

**COUNT X: U.S.C. § 1983 – FIRST AMENDMENT RETALIATION**

72. Plaintiff incorporates paragraph 14, 18, 21-23, 25-26, 30, 42, 46 51 as if fully set forth herein. These paragraphs demonstrate a violation of Plaintiff's First Amendment rights through Orange County's retaliatory publication of a

defamatory DOAH Emergency Motion and affidavit, pursuant to a municipal policy or custom, in response to his protected speech exposing systemic Title VII and ADA violations (¶¶ 14, 18, 21–23, 25–26, 30, 51), with pretextual disciplines evidencing causation (¶¶ 18, 30, 42, 46).

73. Plaintiff engaged in protected speech as a private citizen on matters of public concern by filing motions in DOAH Case #22-3897 after his termination on June 19, 2023, to seek justice for systemic Title VII and ADA violations by Orange County, and through prior activities including a March 10, 2023, email to Daniel Brady, copying Mayor Demings and Assistant County Attorney Shonda White, exposing a 'toxic workplace' and Title VII violations, an August 23, 2022, confrontation with Demings, and EEOC charges filed on June 6, 2023 (¶¶ 14, 21–23, 25–26; see Counts IV–V, VIII–IX for religious, retaliation, and disability details). Orange County, through counsel Patricia Rego Chapman, retaliated by publishing a plague doctor mask photograph of Plaintiff without consent and Isiah White's affidavit falsely claiming Plaintiff was a 'threat to personal and public safety' in a DOAH Emergency Motion on July 7, 2023, filed on Florida's public DOAH website (Case #22-3897), one month after Plaintiff's June 6, 2023, EEOC charges (¶¶ 25, 51; Exhibit G, pp. 28–36; see Counts IV–V, VIII–IX). The affidavit was false, as shown by Plaintiff's passing of a psychiatric exam, a baseless golf cart discipline contradicted by John McElwee's March 21, 2022, email, and other baseless disciplines (¶¶ 18, 30, 42; see Counts IV–IX for religious, retaliation, and disability details). White's admission of non-enforcing the EG2 Grooming Policy

during Plaintiff's segregation (November 1, 2020–March 9, 2023) further reveals retaliatory intent tied to Plaintiff's protected characteristics and speech (¶ 46; Exhibit T, p. 112; see Counts I–III, VI–IX for discrimination, hostile environment, and disability details). Orange County's custom of retaliating against protected speech, pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), is evidenced by Mayor Demings' indifference to Plaintiff's Title VII and constitutional rights on August 23, 2022 (¶ 21; Exhibit S, pp. 72–73; see Count IX) and Assistant County Attorney Shonda White's involvement in reviewing complaints, suggesting a conflict of interest given her relation to Isiah White (¶ 23; see Count IX). The publication harmed Plaintiff's reputation and employability, deterring a person of ordinary firmness from continuing to file motions or speak out. The one-month gap between the EEOC charges and the DOAH motion, combined with White's pretextual history, demonstrates causation. This violated Plaintiff's First Amendment rights, entitling him to compensatory damages for emotional distress and reputational harm, punitive damages against Orange County, and equitable relief (e.g., expungement of the DOAH filing) under 42 U.S.C. § 1983, per *Borough of Duryea v. Guarnieri*, 564 U.S. 379 (2011), and *Bennett v. Hendrix*, 423 F.3d 1247 (11th Cir. 2005).

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff requests:

A. Front pay equivalent to the salary of the Senior Security Representative or similar position applied for, multiplied by 30 years until retirement, including benefits.

B. Back pay with prejudgment interest.

C. Compensatory damages for emotional distress, pain, suffering, humiliation, and reputational harm, up to the cap under 42 U.S.C. § 1981a for Title VII, and without cap for § 1983.

D. Punitive damages as permissible.

E. Expungement of all disciplinary records, including COVID-19 and EG2 Grooming Policy violations.

F. Restoration of Plaintiff's 7.5-year retirement account depleted due to unemployment following termination.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial on all issues so triable.

## **EXHIBITS**

I. Exhibit A: August 26, 2021, Religious Accommodation Request

II. Exhibit B: October 12, 18, November 24, 2021, Disciplinary Notices

III. Exhibit C: October 24, 2022, Revised EG2 Grooming Policy

IV. Exhibit D: Comparator Photographs

V. Exhibit E: November 2023 Photograph of Sandra Canzio

VI. Exhibit F: March 15, 21-22, 2023, Verbal/Oral Warnings and Reprimand

VII. Exhibit G: July 7, 2023, DOAH Emergency Motion and Affidavit

VIII. Exhibit H: Letter Claiming Rescission of COVID-19 Disciplines

IX. Exhibit I: 2024 Public Records Request Confirm COVID-19 Disciplines

X. Exhibit J: Termination Letter

XI. Exhibit K: Office of the Under Secretary of Defense Memo, May 7, 2025

XII. Exhibit L: Anthony Fauci's Testimony, January 8-9, 2024

XIII. Exhibit M: Letter Claiming Religious Accommodation Approved

XIV. Exhibit N: Sr. Safety & Loss Prevention Analyst McElwee's Email

XV. Exhibit O: Partial Transcript of Monica Woods' DOAH Testimony

XVI. Exhibit P: Partial Transcript of Plaintiff's DOAH Testimony

XVII. Exhibit Q: Partial Transcript of Isiah White's DOAH Testimony on Unlawful Orders

XVIII. Exhibit R: Partial Transcript of Isiah White's DOAH Testimony on Plaintiff's Qualifications

XIX. Exhibit S: Transcript of August 23, 2022, Confrontation with Mayor Jerry Demings

XX. Exhibit T: Compilation of Supporting Documents

## CERTIFICATE OF SEFVICE

I **HEREBY CERTIFY** that on July 10, 2025, I served a true and correct copy of the foregoing First Amended Complaint via email on counsel for Defendant at:

Patricia Rego Chapman, Esq.
Attorney for Orange County Board of County Commissioners
Post Office Box 2928

Orlando, Florida 32802-2928
Email: PChapman@DRML-Law.com

Dated: July 10, 2025

/s/ Joshua Crockett
Pro Se Litigant
3900 N. Stockton Hill Rd. Suite B 101
Kingman, Arizona 86409
Telephone: (407)-485-4161
Email: Officialcrockett@yahoo.com